**Affirm and Opinion Filed June 30, 2022**



**In The**
**Court of Appeals**
**Fifth District of Texas at Dallas**

**No. 05-21-00616-CV**

**JOHN DOE, Appellant**
**V.**
**CATHOLIC SOCIETY OF RELIGIOUS AND LITERARY EDUCATION**
**AND JESUIT COLLEGE PREPARATORY SCHOOL OF DALLAS, INC.,**
**Appellees**

**On Appeal from the 14th Judicial District Court**
**Dallas County, Texas**
**Trial Court Cause No. DC-19-03706**

## MEMORANDUM OPINION

Before Justices Myers, Carlyle, and Goldstein
Opinion by Justice Myers

This case concerns whether the discovery rule or other doctrine deferred for over thirty years the accrual of John Doe's causes of action based on the sexual abuse he suffered in 1978 when he was sixteen years old. Doe appeals the summary judgment in favor of the Catholic Society of Religious and Literary Education (the Society) and Jesuit College Preparatory School of Dallas, Inc. (the School). Doe brings one issue contending the trial court erred by granting appellees' motions for summary judgment on the statute of limitations because the discovery rule, the doctrine of fraudulent concealment, and equitable estoppel deferred the accrual of

Doe's causes of action until within two years of the date he filed suit or barred the application of the statute of limitations. We affirm the trial court's judgment.

## BACKGROUND

Doe testified that in 1978, he was sixteen years old and was attending the School. The School's president and its principal, who were both Jesuit priests, invited Doe and Doe's friend and fellow student, G.L., to attend a religious ceremony in Mobile, Alabama, involving another Jesuit who was not yet a priest, Donald Dickerson.[1] Doe and G.L. stayed at the home of Dickerson's parents where Dickerson also lived. G.L. was tired and went to bed early, but Doe stayed up and talked to Dickerson about the priesthood. Dickerson served Doe alcohol despite the fact he was a minor and had no prior experience with alcohol. When Doe was intoxicated, Dickerson led him to a bedroom, performed oral sex on him, and sodomized him. Doe went to the bathroom, and there was blood and semen coming from his anus. Doe also felt pain. Doe had no prior sexual experience and did not realize what had happened to him. Doe woke up G.L. and told him what happened. Doe testified that immediately after the assault, "I was so scared and then I went to go wake up [G.L.] to tell him what had happened and—and when I told him what happened and he didn't believe me and I didn't know what to think. I was scared. I

---

[1] The nature of the ceremony is not clear. Doe testified he thought the ceremony was the ordination of Dickerson. Appellees presented evidence that Dickerson was not ordained until 1980, two years after Doe's trip to Mobile. Whether the ceremony was the ordination of Dickerson or some other ceremony does not affect the outcome of the case.

–2–

was hurting, and I just wanted to go home." The next day, during the ceremony, Doe was still in pain, and he remembered that Dickerson had assaulted him the night before. Doe and G.L. left Mobile "within a day or so" of Doe's encounter with Dickerson. Shortly after returning to Dallas from Mobile, Doe's family moved to Harlingen, and Doe had no further contact with the School and no contact with G.L. until 2018. Doe testified he "had absolutely no memory of what Dickerson had done to me from the time we left Mobile" until he was discussing the trip with G.L. forty years later in 2018.

The Society assigned Dickerson to work at the School in 1980, after Doe had left the School, where Doe alleges Dickerson "sexually assaulted several students." Doe alleged the Society transferred Dickerson to an assistant pastor position in Shreveport, Louisiana, where he sexually assaulted more children. The Society removed Dickerson from the ministry in 1986. Dickerson died in 2016. The priests from the School who took Doe and G.L. to Mobile also died before Doe filed suit.

In 2018, Doe was living in Corpus Christi. G.L. visited Corpus Christi, and he contacted Doe. They met for dinner, and they discussed their time at the School and the trip to Mobile. During that conversation, Doe remembered Dickerson's sexual assault on him for the first time since he left Mobile forty years earlier.

G.L. stated in his affidavit that when he was in Mobile in 1978, Doe told G.L. "he was uncomfortable with something that Dickerson had done to him." G.L. continued, "At the time, I didn't think much of what he told me and I didn't ask him

any questions. Instead, I responded to [Doe] saying something along the lines that—'these Jesuits are pretty demonstrative with their affection, don't take it too seriously.'" During their meeting in 2018, Doe told G.L., "I tried to tell you about what Dickerson did to me when we were in Mobile. . . . Dickerson gave me beer until I was intoxicated and then sodomized me." A few months later, G.L. saw Dickerson's name on the Society's list of credibly accused clergy. G.L. reported Dickerson's sexual assault of Doe to the School's president. G.L. provided the names of some lawyers to Doe "in the hope of his getting him some legal help and possibly justice for his injuries caused by the Jesuits."

Summary judgment evidence shows the Society was aware as early as January 1975 of Dickerson's pederasty, intervened to stop an investigation of Dickerson, and acted to keep the information from becoming public. Letters between members of the Society in its New Orleans province with members in Massachusetts and Italy discussed Dickerson's problems. The January 1975 letter discussed the fact that Dickerson "had a very serious lapse during the first week of December. The lapse was mutual masturbation with a student." The letter states, "The knowledge of this incident is very limited in scope at this present time. I don't think any public action is warranted at this time." The letter also states that the source of the information "is quite disturbed that dramatic actions are not manifest" in light of the concerns of superiors in the Society "for such things." The letter writer states he had to have a

superior explicitly tell the source not to investigate the matter further and that the source "is not too pleased with that directive."

In letters amongst members of the Society in December 1977, there is discussion that Dickerson had a history "of overt homosexual encounters with two high school boys whom he masturbated." After those incidents, Dickerson consulted a psychiatrist. Dickerson was then approved for ordination "on the supposition that condition had been brought under control." However, the weekend before the letter, "during retreat situation, Dickerson kissed and made sexual advances on [a] 14-year-old boy." In light of this conduct, the letter writer concluded Dickerson would not be ordained because "the supposition under which he was approved for ordination, that the psychosexual problem was under sufficient control, evidently does not hold." The letters stated that one leading member of the Society wanted Dickerson's ordination to go forward despite Dickerson's sexual abuse of minors. The Society postponed Dickerson's ordination in 1977, and he was not ordained until 1980.

Doe filed suit against appellees on March 14, 2019, almost forty-one years after the incident. Doe alleged appellees were vicariously liable for Dickerson's actions under the doctrines of respondeat superior and different types of agency. Doe also alleged the Society was negligent by failing to report to the police and other authorities Dickerson's known sexual assaults of children, by assigning Dickerson to locations where children were located knowing he had sexually assaulted children, by failing to investigate Dickerson's known sexual assaults of children, and by

failing to have written policies in place regarding sexual assaults. Doe alleged appellees were negligent and acted with malice by retaining Dickerson or failing to properly supervise him when they knew or should have known Dickerson had abused children.

Doe also alleged appellees were in a special fiduciary relationship with Doe "which [they] breached by subjecting [Doe] to Dickerson, a known pedophile and [are] therefore liable for the wrongful conduct of Dickerson." He also alleged appellees violated their fiduciary duties by failing to disclose the extent of the problem of sexual abuse of children by the Roman Catholic clergy in general, by Jesuits within the New Orleans province, and by Dickerson in particular, and by failing to disclose the psychological problems resulting from untreated sexual abuse. Doe alleged appellees committed fraud by representing Dickerson to be celibate, safe, and not a danger to children and by failing to disclose that Dickerson had sexually assaulted at least three minors before Doe traveled to Mobile. Doe also alleged appellees were grossly negligent, committed negligent misrepresentation and intentional infliction of emotional distress, and engaged in a conspiracy to conceal Dickerson's abuse of children. Doe also alleged appellees were liable under section 323 of the Restatement (Second) of Torts[2] because they operated the School

---

[2] Section 323 of the Restatement (Second) of Torts provides:

One who undertakes, gratuitously or for consideration, to render services to another which he should recognize as necessary for the protection of the other's person or things, is subject

for pecuniary benefit, invited students including Doe to attend, and undertook a duty to properly supervise and protect the students while they were in their care.

Appellees answered, alleging, among other defenses, the affirmative defense that Doe's claims were barred by the two-year statute of limitations. The Society filed a motion for summary judgment on the ground that Doe's suit was barred by limitations, and the School filed a motion for summary judgment that adopted and joined the Society's motion while providing some independent argument. Doe filed a response to the motions. The trial court granted appellees' motions for summary judgment and dismissed Doe's claims.

## SUMMARY JUDGMENT

In his issue on appeal, Doe contends the trial court erred by granting appellees' motions for summary judgment on the ground of the statute of limitations. Appellees' motions asserted they conclusively proved they were entitled to judgment as a matter of law on limitations including that the discovery rule did not defer accrual of Doe's causes of action or toll limitations until two years before Doe filed suit. Appellees also asserted Doe had no evidence to support one of more of the

---

to liability to the other for physical harm resulting from his failure to exercise reasonable care to perform his undertaking, if

    (a) his failure to exercise such care increases the risk of such harm, or

    (b) the harm is suffered because of the other's reliance upon the undertaking.

RESTATEMENT (SECOND) OF TORTS § 323 (1965).

elements of his defenses to the statute of limitations, fraudulent concealment and equitable estoppel.

In a traditional summary judgment, the movant has the burden of showing that no genuine issue of material fact exists and that it is entitled to judgment as a matter of law. TEX. R. CIV. P. 166a(c). In deciding whether a disputed material fact issue exists precluding summary judgment, evidence favorable to the nonmovant will be taken as true. *In re Estate of Berry*, 280 S.W.3d 478, 480 (Tex. App.—Dallas 2009, no pet.). Every reasonable inference must be indulged in favor of the nonmovant and any doubts resolved in its favor. *City of Keller v. Wilson*, 168 S.W.3d 802, 824 (Tex. 2005). We review a summary judgment de novo to determine whether a party's right to prevail is established as a matter of law. *Dickey v. Club Corp.*, 12 S.W.3d 172, 175 (Tex. App.—Dallas 2000, pet. denied).

We review a no-evidence summary judgment under the same legal sufficiency standard used to review a directed verdict. *See* TEX. R. CIV. P. 166a(i); *Flood v. Katz*, 294 S.W.3d 756, 762 (Tex. App.—Dallas 2009, pet. denied). We must determine whether the nonmovant produced more than a scintilla of probative evidence to raise a fact issue on the material questions presented. *See id.* When analyzing a no-evidence summary judgment, we consider all the evidence in the light most favorable to the nonmovant, indulging every reasonable inference and resolving any doubts against the movant. *Sudan v. Sudan*, 199 S.W.3d 291, 292 (Tex. 2006) (quoting *City of Keller v. Wilson*, 168 S.W.3d 802, 824 (Tex. 2005)). A

no-evidence summary judgment is improperly granted if the respondent brings forth more than a scintilla of probative evidence to raise a genuine issue of material fact. *King Ranch, Inc. v. Chapman*, 118 S.W.3d 742, 751 (Tex. 2003). "More than a scintilla of evidence exists when the evidence rises to a level that would enable reasonable, fair-minded persons to differ in their conclusions." *Id.* (quoting *Merrell Dow Pharms., Inc. v. Havner*, 953 S.W.2d 706, 711 (Tex. 1997)). "Less than a scintilla of evidence exists when the evidence is 'so weak as to do no more than create a mere surmise or suspicion' of a fact." *Id.* (quoting *Kindred v. Con/Chem, Inc.*, 650 S.W.2d 61, 63 (Tex. 1983)).

## STATUTE OF LIMITATIONS

The supreme court has set forth the purpose of statutes of limitations:

> Limitations statutes afford plaintiffs what the legislature deems a reasonable time to present their claims and protect defendants and the courts from having to deal with cases in which the search for truth may be seriously impaired by the loss of evidence, whether by death or disappearance of witnesses, fading memories, disappearance of documents or otherwise. The purpose of a statute of limitations is to establish a point of repose and to terminate stale claims.

*Murray v. San Jacinto Agency, Inc.*, 800 S.W.2d 826, 828 (Tex. 1990). A person must bring suit for personal injury not later than two years after the cause of action accrues. *See* TEX. REV. CIV. STAT. ANN. art. 5526 (repealed by Act of May 17, 1985,

69th Leg., R.S., ch. 959, § 1, sec. 16.003, § 9(1), 1985 Tex. Gen. Laws 3242, 3252, 3322) (now codified at TEX. CIV. PRAC. & REM. CODE ANN. § 16.003).[3]

Limitations begins to run when a cause of action accrues. *Barker v. Eckman*, 213 S.W.3d 306, 311 (Tex. 2006). A cause of action generally accrues when a party has been injured by another's acts or omissions. *Id.*; *see also Exxon Corp. v. Emerald Oil & Gas Co., L.C.*, 348 S.W.3d 194, 202 (Tex. 2011) ("Causes of action accrue and statutes of limitations begin to run when facts come into existence that authorize a claimant to seek a judicial remedy."). Under the legal injury rule, a cause of action accrues when a wrongful act causes some legal injury, even if the fact of injury is not discovered until later and even if all resulting damages have not yet occurred. *Murphy v. Campbell*, 964 S.W.2d 265, 270 (Tex. 1997).

In this case, Dickerson's assault on Doe occurred in August 1978. Doe was sixteen at the time, so the limitations period did not begin to run until Doe turned

---

[3] Since 1995, the legislature has increased the limitations period for injuries arising from sexual offenses against children, first extending the period to five years, then fifteen years, and most recently, to thirty years. *See* Act of May 27, 1995, 74th Leg., R.S., ch. 739, § 1, 1995 Tex. Gen. Laws 3850, 3850 (five years); Act of May 30, 2015, 84th Leg., R.S., ch. 918, § 1, 2015 Tex. Gen. Laws 3182, 3182 (fifteen years); Act of May 24, 2019, 86th Leg., R.S., ch. 1306, § 1, 2019 Tex. Gen. Laws 3851, 3851 (thirty years). Except for the 1995 act extending limitations to five years, the statutes provide they do not apply to causes of action accruing before their effective date. However, even if the current statutes concerning limitations did apply, they would not affect this case because, if Doe's causes of action accrued at the time of the injury in 1978 when he was sixteen and the limitations period did not begin to run until he turned eighteen in 1980, then limitations expired thirty years later in 2010, eight to nine years before he filed suit in 2019. The issues would remain the same: whether the discovery rule deferred accrual of the causes of action until 2018 and whether appellees should be barred from asserting limitations under the doctrines of fraudulent concealment and equitable estoppel.

Doe states that in the 2021 legislative session, a bill was introduced that would have eliminated limitations for suits for personal injury arising from sexual abuse of a child. *See* Tex. H.B. 2071, § 3, 87th Leg., R.S. (2021). The bill never reached the House floor for a vote, and it did not become law.

eighteen in 1980.  *See* CIV. PRAC. § 16.001(a)(1) (disability due to minority status ends at age eighteen).  The limitations period was two years.  CIV. STAT. art. 5526. Thus, limitations expired in 1982, two years after Doe turned eighteen, unless accrual of Doe's causes of action was deferred or the running of the limitations period was tolled.[4]

### Discovery Rule

The discovery rule is a limited exception to the general rule that a cause of action accrues at the time of the injury, deferring the accrual of a cause of action until the plaintiff knew or, exercising reasonable diligence, should have known of the facts giving rise to the cause of action.  *See Computer Assocs. Int'l, Inc. v. Altai, Inc.*, 918 S.W.2d 453, 455 (Tex. 1996).  We apply the discovery rule only when the nature of plaintiff's injury is inherently undiscoverable and the evidence of injury is objectively verifiable.  *See id.* at 456.  "These two elements of inherent undiscoverability and objective verifiability balance the conflicting policies in statutes of limitations:  the benefits of precluding stale or spurious claims versus the risks of precluding meritorious claims that happen to fall outside an arbitrarily set period."  *S.V. v. R.V.*, 933 S.W.2d 1, 6 (Tex. 1996).

An injury is inherently undiscoverable if it is, by its nature, unlikely to be discovered within the prescribed limitations period despite due diligence.  *Wagner*

---

[4] If the age of majority for limitations purposes in 1978 was twenty-one and not eighteen, then Doe's causes of action accrued in 1985 unless accrual was deferred.  This difference of three years does not affect the outcome of the case.

–11–

*& Brown, Ltd. v. Horwood*, 58 S.W.3d 732, 734–35 (Tex. 2001). Whether an injury is inherently undiscoverable is a legal question "decided on a categorical rather than case-specific basis; the focus is on whether a *type* of injury rather than a *particular* injury was discoverable." *Via Net v. TIG Ins. Co.*, 211 S.W.3d 310, 314 (Tex. 2006) (per curiam). When the discovery rule applies, limitations begins to run when a party has actual knowledge of a wrongful injury, even when he does not yet know the specific cause of, the party responsible for, or the full extent of, the injury. *Exxon Corp. v. Emerald Oil & Gas Co.*, 348 S.W.3d 194, 207 (Tex. 2011).

If a summary judgment motion is based on limitations, the defendant must conclusively establish every element of that defense, including when the claim accrued. *Schlumberger Tech. Corp. v. Pasko*, 544 S.W.3d 830, 833–34 (Tex. 2018) (per curiam). The defendant must also conclusively negate application of the discovery rule and any pleaded tolling doctrines. *Erikson v. Renda*, 590 S.W.3d 557, 563 (Tex. 2019).

The discovery rule does not generally apply to claims from a violent assault because the plaintiff is usually aware of the assault. *See Estate of Tobolowsky*, No. 05-19-00073-CV, 2020 WL 6143676, at *4 (Tex. App.—Dallas Oct. 20, 2020, no pet.) (mem. op.); *see also Brothers v. Gilbert*, 950 S.W.2d 213, 216 (Tex. App.—Eastland 1997, pet. denied) ("The 'discovery rule' is not applicable to claims of common-law assault.").

In this case, Doe's causes of action accrued when a wrongful act caused him some legal injury. *Murphy*, 964 S.W.2d at 270; *see also Moreno v. Sterling Drug, Inc.*, 787 S.W.2d 348, 351 (Tex. 1990) ("For purposes of the application of limitation statutes, a cause of action can generally be said to accrue when the wrongful act effects an injury, regardless of when the plaintiff learned of such injury."). Dickerson's sexual assault on Doe was clearly a wrongful act, and Doe suffered a legal injury at that time. Doe described in his affidavit the physical injuries he suffered from the assault, including the pain and bleeding. However, Doe pleaded that the discovery rule applied and deferred the accrual of his claims until he remembered the assault in 2018. Appellees had the burden at the summary judgment stage to conclusively disprove the applicability of the discovery rule.[5] *Erikson¸* 590 S.W.3d at 563.

Doe presented some evidence that the assault was inherently undiscoverable through the affidavit of a psychologist, Dr. Alexandria Doyle. Dr. Doyle testified she interviewed Doe and his mother. She reviewed Doe and G.L.'s depositions and affidavits, the live petition, and Doe's medical and school records. She also administered clinical tests to Doe. She recounted the facts based on her interview with Doe and as presented in Doe's affidavit and petition. She stated,

---

[5] Appellees argued the discovery rule does not apply because Doe was aware of the injuries for at least a day or two after the assault. Because we conclude Doe's injuries were not objectively verifiable, we need not address this argument.

> In my opinion, based upon reasonable psychological certainty, the Jesuit Donald Dickerson's abuse of [Doe] resulted in severe psychological issues that prevented him from coming forward any sooner than he did in prosecuting his lawsuit. The effects of the PTSD that [Doe] suffered as a result of the sexual abuse by the Jesuit Dickerson caused [Doe's] memories of the abuse to cease. . . . The underlying effect of the abuse still impacted his psychological, social, emotional and religious functioning even though [Doe] was not consciously aware of the acts of abuse.

She also stated that Doe had "many symptoms over his lifetime that are attributable to sexual abuse survivors." She concluded by stating that, in her opinion, "the sexual abuse by the Jesuit Dickerson that [Doe] suffered was 'inherently undiscoverable' by [Doe] from 1978 until his memory was triggered by the conversation with his friend [G.L.] in the Summer of 2018." For purposes of this opinion, we assume that appellees did not conclusively disprove that the sexual assault was inherently undiscoverable and that Doyle's testimony provided some evidence that Doe's injuries were inherently undiscoverable. *Cf. S.V.*, 933 S.W.2d at 8 ("Nevertheless, given the special relationship between parent and child, and the evidence reviewed in detail below that some traumas are by nature impossible to recall for a time, we assume without deciding that plaintiff can satisfy the inherent undiscoverability element for application of the discovery rule.").

We next consider whether appellees conclusively proved the assault was not objectively verifiable. "An injury is 'objectively verifiable' if the presence of injury and the producing wrongful act cannot be disputed, and the facts upon which liability is asserted are demonstrated by direct, physical evidence." *Bertrand v. Bertrand*,

–14–

449 S.W.3d 856, 866 (Tex. App.—Dallas 2014, no pet.). In *S.V.*, the supreme court listed the types of evidence providing objective verification of sexual assault as including "a confession by the abuser; a criminal conviction; contemporaneous records or written statements of the abuser such as diaries or letters; medical records of the person abused showing contemporaneous physical injury resulting from the abuse; photographs or recordings of the abuse; an objective eyewitness's account; and the like." *S.V.*, 933 S.W.2d at 15.

In this case, there is no confession by Dickerson, who is now deceased. Doe ceased to remember the incident after he left Mobile and went home, so there are no medical records, photographs, or recordings of his injuries. There was no objective eyewitness. G.L. stated in his affidavit that Doe told him the night of the assault or the next morning that "he was uncomfortable with something that Dickerson had done to him," but G.L. did not witness what happened to Doe, nor did he make a contemporaneous written record of what Doe told him, so G.L.'s statement does not objectively verify that Dickerson sexually assaulted Doe. Dickerson and the priests from the school who went with Doe to Mobile are deceased, so they cannot provide any testimony to verify the assault. Because Doe ceased to remember the assault almost immediately, he could not have told his parents or anyone else.[6] Nor is there

---

[6] We make no determination that a contemporaneous record of a statement by a sexual abuse victim shortly after the abusive incident describing the abuse and identifying the abuser would constitute objective verifiable evidence of the assault because the source of the information would be the victim/plaintiff. However, even if such evidence could be objective verifiable evidence, there is no such evidence in this case.

–15–

any direct, physical evidence that he was assaulted. *See Bertrand*, 449 S.W.3d at 866.

In *S.V.*, a majority of the supreme court rejected the suggestion of the dissenting justice that the victim's testimony that the assault occurred combined with expert testimony that the expert believed the victim was sexually assaulted and that the victim exhibited traits consistent with sexual abuse would be sufficient to meet the element that the injury was objectively verifiable. The majority stated, "Were this the rule, few claims of sexual abuse would ever be barred by limitations." *S.V.*, 933 S.W.2d at 22.

Doe argues that, in line with the courts of South Carolina, we should conclude there is evidence of objective verification of sexual abuse when there is "evidence the abuser had sexually abused others." *See Moriarty v. Garden Sanctuary Church of God*, 511 S.E.2d 699, 710 (S.C. Ct. App. 1999), *aff'd*, 534 S.E.2d 672 (S.C. 2000).[7] We decline to do so. In *S.V.*, the Texas Supreme Court was clear about the types of evidence that could provide objective verification for application of the discovery rule in a sexual abuse case. All of those are highly credible types of evidence demonstrating that the alleged sexual abuse actually occurred, such as a criminal conviction of the abuser for the alleged abuse, statements in

---

[7] In *Moriarty*, the South Carolina Court of Appeals and Supreme Court determined only that a plaintiff could assert the discovery rule in a case involving repressed and subsequently recovered memories of sexual abuse. The courts did not determine whether the plaintiff in that case had presented "objectively verifiable evidence to corroborate" her claim. *See Moriarty*, 511 S.E.2d at 711; *Moriarty*, 534 S.E.2d at 682.

contemporaneous medical records, contemporaneous statements by the abuser, a confession or other statement such as a diary entry by the abuser admitting the abuse, or photographs or recordings of the abuse. *See S.V.*, 933 S.W.2d at 15. These types of evidence and "the like" could provide objective verification of the injury. *Id.* To determine what evidence would constitute "the like" to the items listed in *S.V.*, we must determine what the listed items have in common. What all have in common is that they are either direct evidence of the abuse or are contemporaneous records from traditionally credible sources purporting to show that the accused person sexually abused the victim. Evidence that an alleged abuser had sexually abused others is not direct, physical evidence that the alleged abuse occurred, nor is it evidence purporting to show that the alleged abuser sexually abused the victim. *See Bertrand*, 449 S.W.3d at 866 (injury is objectively verifiable "if the presence of the injury and producing wrongful act cannot be disputed, and the facts upon which liability is asserted are demonstrated by direct, physical evidence."). Therefore, evidence that an alleged abuser had abused others it is not "the like" of the other types of evidence mentioned in *S.V.*

Doe also asks us to adopt the standard in *Moriarty* of "proof in this case of a chain of facts and circumstances having sufficient probative force to produce a reasonable and probable conclusion that sexual abuse occurred." If the proof in the chain of facts is of highly credible sources amounting to direct physical evidence of the abuse, as the rest of the items listed in *S.V.* do, then it might provide for applying

–17–

the discovery rule. However, there is no such evidence in this case. Excluding Doe's testimony,[8] the evidence shows Dickerson had sexually abused at least three youths before Doe and G.L. stayed at Dickerson's house, Doe did not go to bed at the same time as G.L. but stayed up to talk to Dickerson, and Doe told G.L. that night or the next day that "he was uncomfortable with something that Dickerson had done to him." This evidence does not permit a reasonable and probable conclusion that the sexual abuse Doe alleged occurred, nor does it constitute direct physical evidence that the abuse occurred. Doe also points to Dr. Doyle's testimony. However, she determined only that Doe's symptoms were consistent with sexual abuse. She had no independent knowledge that Dickerson sexually abused Doe. Her determination that Dickerson had sexually abused Doe was based on Doe's statements to her and his petition and other court documents. In *S.V.*, the supreme court rejected the idea that an expert's testimony combined with the testimony of the plaintiff constituted objective verification of the injury. *See S.V.*, 933 S.W.2d at 22.

We conclude the trial court did not err by granting appellees' motion for summary judgment on the ground that the discovery rule did not defer accrual of Doe's causes of action.

---

[8] As discussed above, the Texas Supreme Court in *S.V.* rejected the suggestion that the plaintiff's testimony, even combined with expert testimony that the plaintiff's symptoms were consistent with sexual abuse, provided objective verification. *See S.V.*, 933 S.W.2d at 22.

**Fraudulent Concealment**

Doe contends the trial court erred by granting appellees' motion for summary judgment because the doctrine of fraudulent concealment barred application of the statute of limitations.

Fraudulent concealment is an equitable defense to the application of limitations that estops a defendant from relying on the statute of limitations even though the plaintiff did not bring suit within the limitations period. *Draughon v. Johnson*, 631 S.W.3d 81, 93 (Tex. 2021). The plaintiff asserting fraudulent concealment has the burden of presenting some evidence of each of the elements. *Id.* "Fraudulent concealment requires showing that the 'defendant actually knew the plaintiff was in fact wronged, and concealed that fact to deceive the plaintiff.'" *ExxonMobil Corp. v. Lazy R Ranch, LP*, 511 S.W.3d 538, 544 (Tex. 2017) (quoting *BP Am. Prod. Co. v. Marshall*, 342 S.W.3d 59, 67 (Tex. 2011)); *see also Santanna Nat. Gas Corp. v. Hamon Operating Co.*, 954 S.W.2d 885, 890 (Tex. App.—Austin 1997, pet. denied) ("The elements of fraudulent concealment are first, actual knowledge by the defendant that a wrong has occurred, and second, a fixed purpose to conceal the facts necessary for the plaintiff to know that it has a cause of action."). "Fraudulent concealment only tolls the running of limitations until the fraud is discovered or could have been discovered with reasonable diligence." *BP Am. Prod. Co.*, 342 S.W.3d at 67. Appellees moved for summary judgment on the traditional ground that the fraudulent concealment defense does not apply in this case and on

the ground there was no evidence they concealed from Doe the existence of his causes of action.

In *S.V.*, the supreme court indicated that fraudulent concealment does not usually apply to sexual abuse cases. There, the victim, R., alleged she was sexually abused by her father and that she unconsciously repressed all memory of it for years. *S.V.*, 933 S.W.2d at 8. The supreme court stated that R. did not, and could not, allege fraudulent concealment: "R. was not deceived into thinking that she was not being abused when she was. To the contrary, R.'s contention is that she was fully aware of the episodes of abuse, so painfully so that she repressed all memory of them for years." *Id.*

Doe testified in his deposition that neither the Society nor the School did anything to prevent Doe from remembering what Dickerson did to him. He also testified appellees did not do anything to keep him from filing a lawsuit.[9] Like R. in

---

[9] Doe testified in his deposition:

Q. . . . Do you think that the Jesuits have done anything to keep you from remembering what Don Dickerson did?

A. No.

Q. Do you think that the school did anything to keep you from remembering what Don Dickerson did?

A. No.

. . . .

Q. Did the Jesuits do or say anything to keep you from filing a lawsuit?

A. No.

Q. And did the school do or say anything to keep you from filing a lawsuit?

A. No.

*S.V.*, Doe was not deceived into thinking he was not being abused when he was. Like R., the event was so traumatizing that Doe repressed all memory of the abuse for decades. Furthermore, there is no evidence that appellees knew Dickerson had sexually abused Doe until G.L. and Doe told them in 2018 and 2019, nor is there any evidence that appellees concealed evidence of Dickerson's abuse of Doe.

Doe argues appellees had a duty to disclose what they knew concerning Dickerson's history of sexually abusing minors. However, for there to be fraudulent concealment, there must be evidence that appellees "actually knew [Doe] was in fact wronged and concealed that fact to deceive [Doe]." *See ExxonMobil*, 511 S.W.3d at 544; *BP Am. Prod. Co.*, 342 S.W.3d at 67. Regardless of whether appellees were aware that Dickerson had abused other minors, there is no evidence they knew Doe "was in fact wronged." *See ExxonMobil*, 511 S.W.3d at 544; *BP Am. Prod. Co.*, 342 S.W.3d at 67. Because there is no evidence that appellees had any knowledge before 2018 that Dickerson had sexually abused Doe, there is no evidence they concealed "that fact" to deceive Doe.

We conclude the trial court did not abuse its discretion by granting appellees' motions for summary judgment on Doe's claim that fraudulent concealment barred the application of the statute of limitations.

## Equitable Estoppel

Doe also contends the trial court erred by granting appellees' motions for summary judgment because appellees should be estopped from asserting the statute

of limitations.  The doctrine of equitable estoppel requires the plaintiff to prove "(1) a false representation or concealment of material facts; (2) made with knowledge, actual or constructive, of those facts; (3) with the intention that it should be acted on; (4) to a party without knowledge or means of obtaining knowledge of the facts; (5) who detrimentally relies on the representations." *Johnson & Higgins of Tex., Inc. v. Kenneco Energy, Inc.*, 962 S.W.2d 507, 515–16 (Tex. 1998).  The plaintiff has the burden of raising some evidence of each element of equitable estoppel. *Exxon Mobil Corp. v. Rincones*, 520 S.W.3d 572, 593 (Tex. 2017).  "Estoppel in avoidance of limitations may be invoked in two ways:  a potential defendant conceals facts that are necessary for the plaintiff to know he has a cause of action; or, the defendant engages in conduct that induces the plaintiff to forego a timely suit regarding a cause of action that the plaintiff knew existed." *Doe v. Catholic Diocese of El Paso*, 362 S.W.3d 707, 724 (Tex. App.—El Paso 2011, no pet.).  Appellees moved for summary judgment on equitable estoppel on the traditional ground that the doctrine does not apply in this case and on the ground that Doe had no evidence that appellees induced him to delay suit beyond the limitations period.

Doe argues appellees concealed from him and his parents the facts that Dickerson had sexually abused at least three minors before Doe stayed at his house in 1978.  Doe asserts he and his parents had no means to become aware of these facts.  He also asserts appellees intended for Doe to rely on their concealment of these facts.  He asserts, "This deliberate failure on the part of the Appellees to

disclose the facts regarding Dickerson's prior sexually predatory behavior toward children led to [Doe] being placed by the Appellees in the care of a known pedophile in Dickerson and was a proximate cause of his injury." However, the question is not whether appellees engaged in conduct that grievously harmed Doe by concealing their knowledge and permitting Dickerson to be around boys knowing Dickerson was an uncontrollable pederast. That question goes to appellees' potential culpability for their actions. But the issue before us concerns only the applicability of the statute of limitations. For that issue, we must determine whether the facts appellees allegedly concealed were necessary for Doe to know he had a cause of action or whether appellees induced Doe to forego a timely suit that Doe knew existed.

Doe was aware, at least for a day or two after the assault, that Dickerson had harmed him. Doe does not explain, and we do not perceive, how appellees' alleged concealment of Dickerson's prior sexual abuse of children prevented Doe from knowing he had a cause of action or induced him to forego bringing a timely suit when he knew he had a cause of action. Nor does Doe present any evidence that appellees concealed facts necessary for Doe to know Dickerson assaulted him or that appellees did anything to prevent Doe from timely filing suit against them. Instead, Doe testified appellees did nothing to prevent him from remembering what Dickerson did to him or to prevent him from filing a lawsuit.

We conclude the trial court did not err by granting appellees' motions for summary judgment on equitable estoppel. We overrule Doe's issue on appeal.

## CONCLUSION

We do not question the sincerity of Doe's motive for bringing the lawsuit or the reality of the terrible ordeal he underwent at the hands of a person who should have protected him and while in the care of organizations dedicated to protecting children like himself. Like the supreme court, this Court is not "insensitive to the terrible wrong of childhood sexual abuse and the strong public policies condemning it. . . . [T]he law must approach these difficult cases with an appreciation of all the interests affected." *S.V.*, 933 S.W.2d at 25–26. The purpose of the statute of limitations is to "protect defendants and the courts from having to deal with cases in which the search for truth may be seriously impaired by the loss of evidence, whether by death or disappearance of witnesses, fading memories, disappearance of documents or otherwise." *Murray*, 800 S.W.2d at 828. The forty years between the assault and Doe's bringing suit has taken a toll on the evidence available in this case as every person involved aside from Doe and G.L. appears to be deceased. The courts have created narrow exceptions to the application of the statute of limitations, including the discovery rule, fraudulent concealment, and equitable estoppel, but the evidence conclusively established those exceptions do not apply in this case and that Doe did not present evidence raising a genuine issue of material fact as to whether those exceptions apply.

–24–

We affirm the trial court's judgment.

210616f.p05

/Lana Myers//
LANA MYERS
JUSTICE



## Court of Appeals
## Fifth District of Texas at Dallas

## JUDGMENT

JOHN DOE, Appellant

No. 05-21-00616-CV     V.

CATHOLIC SOCIETY OF
RELIGIOUS AND LITERARY
EDUCATION AND JESUIT
COLLEGE PREPARATORY
SCHOOL OF DALLAS INC.,
Appellees

On Appeal from the 14th Judicial
District Court, Dallas County, Texas
Trial Court Cause No. DC-19-03706.
Opinion delivered by Justice Myers.
Justices Carlyle and Goldstein
participating.

In accordance with this Court's opinion of this date, the judgment of the trial court is **AFFIRMED**.

It is **ORDERED** that appellees Catholic Society of Religious and Literary Education and Jesuit College Preparatory School of Dallas, Inc. recover their costs of this appeal from appellant John Doe.

Judgment entered this 30th day of June, 2022.